UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TONY FULTON WELLS,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Petitioner,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀No.:⠀⠀3:16-CV-566-CLC-HBG
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
GRADY PERRY, Warden,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Respondent.⠀⠀⠀⠀⠀)

## AMENDED MEMORANDUM OPINION

This is a counseled second amended petition for a writ of habeas corpus under 28 U.S.C.
§ 2254, filed on behalf of Petitioner Tony Fulton Wells [Doc. 6]. Raising two main grounds for
relief, Petitioner is challenging the constitutionality of his confinement under a 2012 state court
judgment convicting him of second-degree murder [*Id.*].

Respondent has filed an answer to the pleading [Doc. 13] and has attached thereto the
state court record [Doc. 12, Notice of Filing Documents, Attachments 12-1 through 12-11].
Respondent argues that four of the claims asserted in Petitioner's two primary grounds for relief
have been procedurally defaulted. The remaining claims, so Respondent argues, do not warrant
habeas corpus relief because the TCCA adjudicated those claims and reached a decision that was
not contrary to or an unreasonable application of the governing Supreme Court precedent.

Petitioner has not filed a reply, and the time for doing so has passed. *See* E.D. Tenn. L.R.
7.1(a). For the reasons that follow, the second amended petition will be **DENIED**.

## I.⠀⠀PROCEDURAL HISTORY

On April 2, 2012, in the Criminal Court for Union County, Tennessee, Petitioner entered
a plea of nolo contendere to one count of second-degree murder, a Class A felony, and received

the recommended punishment for that offense of 25-year's imprisonment [Doc. 12-2, Plea Hr'g Tr. pp. 8 and 31].[1] Petitioner did not file an appeal. Rather, Petitioner filed a petition for post-conviction relief, but the post-conviction court denied his petition. *Wells v. State*, No. E2015-00463-CCA-R3-PC, 2016 WL 656616, at *1 (Tenn. Crim. App. Feb. 17, 2016), *perm. app. denied*, (Tenn. 2016). The Tennessee Court of Criminal Appeals ("TCCA") affirmed the judgment of the post-conviction court and, on June 23, 2016, the Tennessee Supreme Court denied Petitioner permission to appeal [*Id.*]. Petitioner next filed an initial § 2254 petition and an amended § 2254 petition [Docs. 1 and 3], but this Court found that both such petitions were insufficient [Docs. 2 and 5]. Petitioner then submitted the second amended petition for habeas corpus relief [Doc. 6], which is now ripe for disposition.

## II.    FACTUAL BACKGROUND

The facts that led to Petitioner's plea and conviction are set forth in the opinion of the TCCA.

> The State . . . introduced statements from the victim's two sons, the victim's neighbor Linda Griffey, and two statements the petitioner made to police as a summary of the evidence against the petitioner. According to the statements, the petitioner lived with the victim and her two sons, D.C. and T.W., and he was the boys' stepfather. Prior to the shooting, the petitioner had been unemployed for several weeks and was "stressed" about his inability to find a job. The petitioner had a Ruger P 89 pistol that he showed the victim's older son, D.C., how to use on the evening of the shooting. Throughout the evening, the petitioner was drinking vodka. When the boys went to bed, the petitioner was alone in the living room

---

[1] A nolo contendere plea is not viewed as an express admission of guilt, but as a consent by a defendant that he may be punished as though he were guilty. *North Carolina v. Alford*, 400 U.S. 25, 36 n. 8 (1970). In Tennessee, a plea of nolo contendere is treated the same as a guilty plea. *State v. Davenport*, No. C.C.A. 88-19-III, 1988 WL 119320, * 4 (Tenn. Crim. App. Nov. 10, 1988).

with the victim. He began "talking crazy stuff," and the victim appeared to fear for her safety. The victim was on the couch, and the petitioner picked up his Leatherman knife and said that if he wanted to hurt the victim or her sons, he would have already done so.

From his bedroom, T.W. heard the victim crying in the living room. He went into the kitchen, and he saw the victim lying on the couch and the petitioner standing over her with an envelope opener. He returned to his bedroom and told his brother that he believed that the petitioner stabbed the victim. While in his bedroom, T.W. overheard the petitioner tell the victim twice to sit down.

Back in the living room, the petitioner told the victim to be quiet. He leaned toward her with the knife in his hand. As he leaned forward, the victim raised her hand, and the petitioner cut a finger on her right hand. The petitioner placed his right hand on the couch, and the knife punctured the cushion. Upset that he cut the couch and that the victim was afraid, the petitioner sat down on the couch and took several drinks of vodka. While on the couch, he picked up the pistol and "racked" it. He stood up and walked between the coffee table and the television. The petitioner claimed that he was planning to de-cock the pistol, and he had his finger on the trigger and his thumb on the hammer. His thumb never grasped the top of the hammer, and the gun went off, shooting the victim in the head. The petitioner pulled the victim onto the floor and began repeating her name.

D.C. and T.W. heard the gunshot and ran into the living room. D.C. smelled gun powder, and both boys saw the victim lying on the floor. D.C. ran out of the house and called the police, and the petitioner told T.W. to call their neighbor, Russell Riffey. Ms. Griffey, was awakened by her son around 12:30 or 1:00 a.m. on the date of the shooting, before T.W. was able to call their home. Ms. Crriffey's[2] son told her that something was wrong at the victim's home and that the victim's sons "were screaming and running in the yard." She received a call from T.W., and she told him to hang up so that she could call 9–1–1. She called 9–1–1, and Mr. Riffey left to go to the victim's home. Ms. Crriffey saw Mr. Riffey wrestling with the petitioner on the porch of the victim's home, and she learned from a hysterical T.W. that the victim had

---

[2] The TCCA's opinion variously refers to this individual as "Ms. Crriffey" and as "Ms. Griffey." The Court infers from the context of the opinion, that this person's surname has been misspelled and that the correct spelling of her surname is "Riffey."

3

been shot in the head. Ms. Griffey went to the victim's home and took T.W. back to her home. Ms. Crriffey looked back and saw that police had arrived and that they and her husband were still struggling with the petitioner. Ms. Griffey saw the petitioner being placed in a police car and shouting to tell the victim that he would find employment "and everything would be all right."

The State also said it planned to call Dr. Christopher Lockmuller, a forensic pathologist, who would have testified that at the time of the shooting, the petitioner had to have been within three feet of the victim. Dr. Lockmuller also would have testified consistently with the autopsy report, which showed that the victim had a single gunshot wound to the head associated with severe injury to the brain and skull. There was a "very shallow cut" on the third finger of the victim's left hand, along with five "linear abrasions." Additionally, there were minor abrasions on the victim's body.

At the conclusion of the summary, the trial court asked the petitioner if he contested any of the evidence that the State submitted. The petitioner responded that he contested "[s]ome of it." When asked to specify his objections, the petitioner responded, "On the things that was said on the second statement after I asked for a lawyer, they continued to question me and everything else." Trial counsel clarified for the petitioner that the trial court was asking whether he specifically contested what the State said their proof would be. After a conference with trial counsel, the petitioner stated that he did not contest the evidence. The trial court found the petitioner guilty of second degree murder and imposed a twenty-five-year sentence.

*Wells*, 2016 WL 656616, at *1-2 (footnote omitted).

## III.   DISCUSSION

Petitioner lists two primary grounds for relief, with each ground containing several claims [Doc. 6 at 5, 7, and 16].

      1.     Petitioner was denied effective assistance of counsel and due process of law, in that:

          a.     counsel gave petitioner insufficient time to consider his guilty plea;

          b.     Petitioner did not understand the terms and did not plead guilty knowing and voluntarily; and

<ol type="a" start="3">
<li>Petitioner was not told that he could not appeal and that he was waiving any appeal. Had he known that he was waiving his appeal, he would not have pled guilty.</li>
</ol>

2. Petitioner received ineffective assistance of counsel, in that counsel:

<ol type="a">
<li>negligently failed to interview the key witness;</li>
<li>failed to follow the recommendations of his own expert;</li>
<li>failed to interview the victim's youngest son, D.C.;[3]</li>
<li>failed to investigate and present exculpatory evidence;</li>
<li>failed to investigate and develop ballistics evidence; and</li>
<li>failed to develop psychological evidence.</li>
</ol>

For ease of discussion, the Court has organized the claims into three categories: (1) claims that have not been pled sufficiently, (2) claims that were adjudicated in state courts, and (3) claims that are subject to a finding of procedural default.

### A.   Insufficiently-Pled Claims

A petitioner must state facts that point to a real possibility of constitutional error to be entitled to habeas corpus relief. *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977). A claim that lacks any factual support is conclusory, and it is well settled that conclusory claims fail to state a claim for relief under § 2254. *Lynott v. Sto*ry, 929 F.2d 228, 232 (6th Cir. 1991) (observing that bare, conclusory allegations, unsupported by facts, cannot establish a constitutional violation). Even though Respondent did not address specifically either Claim 1.b or 1.c in his answer, the Court finds that neither claim warrants habeas corpus relief.

Petitioner asserts in Claim 1.b that he did not understand the terms of his plea agreement and that, thus, he did not plead guilty knowingly and voluntarily. The second amended petition does not identify any terms in the plea offer, save the offense charged and the agreed-upon sentence, much less specify which terms he did not understand. Nor did the TCCA mention or

---

[3] As did the state court in its opinion, this Court refers to the victim's children by their initials.

address any issue involving Petitioner's lack of understanding of the terms of the plea offer. Indeed, the TCCA had no need to do so because the issue was not presented in Petitioner's post-conviction appeal [Doc. 12-9, Petr.'s Post-Conviction Br.]. Given the lack of any supporting factual allegations, Claim 1.b has been pled insufficiently. Without some factual backing, Claim 1.b violates Rule 2.

Petitioner also has failed to clothe Claim 1.c with any facts. In Claim 1.c, Petitioner asserts that he was not told that he could not appeal and that he was waiving any appeal and that, had he known that he was waiving his appeal, he would not have pled guilty. Petitioner has labeled Claim 1, in its entirety, as "Denial of effective assistance of counsel and due process of law [Doc. 6 at 5]. The Court cannot discern, in the absence of any factual underpinnings, whether Petitioner is contending that trial counsel failed to advise him that he could not appeal and that he was waiving any appeal or that the trial court failed to give him such advice during the plea colloquy.

The Court has searched the record and has found that, while Claim 1.c was raised in Petitioner's amended post-conviction petition as Claim 4 [Doc. 12-1 at 35], he did not carry the claim to the TCCA in his post–conviction appeal. This omission alone would be grounds for the Court to find sua sponte that the claim has been procedurally defaulted, *Rhodes v. Bell*, No. 07–1411, 2011 WL 2135188, at * 1(6th Cir. May 31, 2011) (commenting that "courts may, on their own initiative, raise a petitioner's procedural default) (citing to *Day v. McDonough*, 547 U.S. 198, 206 (2006), a doctrine that will be discussed in depth later in this opinion. However, at its inception, Claim 1.c contained a deficiency that renders habeas corpus relief unavailable.

In its opinion, the TCCA recounted Petitioner's testimony at the post-conviction hearing where he stated that "he could not recall if trial counsel informed him that he was waiving his

right to an appeal by pleading guilty." *Wells*, 2016 WL 6566126 at * 3. The TCCA further recounted that Petitioner stated that he "'[v]aguely' remembered the trial court telling him that he was waiving his right to a trial and an appeal, and he agreed that he said 'yes' to that question." *Id.*, 2016 WL 6566126 at * 3.

Petitioner cannot claim that counsel failed to advise him that he was waiving his right to appeal by pleading guilty when he has testified under oath that he does not recall whether counsel so advised him. Nor can Petitioner claim that the trial court failed to tell him that he was waiving his right to appeal because he admitted, again under oath, that he "[v]aguely" recalled that he was given that advice by the trial court during the plea colloquy.

Accordingly, because Claim 1.b has been insufficiently pled and because Claim 1.c is undercut by Petitioner's own sworn testimony at the post-conviction hearing, those claims warrant no habeas corpus relief.

**B.**     **Adjudicated Clams**

In this category are claims that Petitioner's counsel gave him ineffective assistance during the plea process, in the entry of his plea, and at the plea hearing, and that these alleged attorney failings rendered Petitioner's plea unlawful. The claims that were raised and adjudicated in the TCCA are Claims 1.a, 2.a, and 2.d.

**1.**     **Standards of Review**

The adjudicated claims will be evaluated under the review standards contained in the Antiterrorism and Effective Death Penalty Act (AEDPA), codified in 28 U.S.C. § 2241. The AEDPA standards instruct a court considering a habeas claim to defer to any decision by a state court concerning the claim unless the state court's judgment: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts, which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies the principle to the particular facts of the case. *Id.* at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id.* at 411; *see also Harrington v. Richter*, 562 U.S. 86,102 (2011) ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

This is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington*, 562 U.S. at 102). Further, findings of fact which are sustained by the record are entitled to a presumption of correctness—a presumption that may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 2. Plea Challenges - Claim 1.a

In Claim 1.a, Petitioner alleges that he was denied effective assistance of counsel and due process of law during the plea process and in the entry of his nolo contendere plea because counsel did not afford him enough time to consider his plea.

### a.    Governing Law

The Constitution permits an accused to plead guilty in his best interest, while professing his actual innocence.  *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  The constitutional standards which determine whether a plea of *nolo condendere* is valid are the same ones which apply to a guilty plea because "the Constitution is concerned with the practical consequences, not the formal categorizations, of state law."  *Id.* at 37.  According to the Supreme Court, "[a] plea of guilty is more than a confession which admits that the accused did various facts; it is itself a conviction; nothing remains but to give judgment and determine punishment."  *Boykin v. Alabama*, 395 U.S. 237, 242 (1969).  Because of the substantial consequences flowing from a plea of guilty and to ensure that a plea is voluntary and knowing, a court must ascertain, prior to accepting such a plea, whether a defendant understands that he is waiving three separate rights—the right to a trial by jury; the right to confront his accusers; and the privilege against self-incrimination.  *Id.* at 243–44.

To ensure that a plea is voluntary and knowing, a plea-taking court must ascertain that the plea is being proffered with sufficient awareness of the relevant circumstances and the probable and direct consequences flowing therefrom.  *Brady v. United States*, 397 U.S. 742, 748–49 (1979).  A plea is not valid unless it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *Alford,* 400 U.S. at 31).  After a plea has been entered on the advice of counsel, a petitioner "may only attack the voluntary and intelligent character" of the plea by showing that his counsel's advice was outside "the range of competence demanded of attorneys in criminal cases." *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) (citation omitted).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. IV. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court established a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

*Id.*

In considering the first prong of the *Strickland* test, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A petitioner asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Thus, counsel's conduct is strongly presumed to have fallen within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

Second, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United*

*States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694). In the context of a guilty plea, to prove *Strickland*'s prejudice prong, a petitioner must show a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694). A reviewing court owes significant deference to a state court's prejudice determination due to "the uncertainty inherent in plea negotiations." *Premo v. Moore*, 562 U.S. 115, 117 (2011). Where "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

"[W]hen a federal court reviews an ineffective-assistance claim brought by a state prisoner, the question is not simply whether counsel's actions were reasonable, 'but whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015) (quoting *Harrington*, 562 U.S. at 105). Moreover, because AEDPA applies, this Court's evaluation of the TCCA's decision on the ineffective assistance claims is "'doubly deferential' . . . that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

When Petitioner challenged the validity of his nolo contendere plea in his post-conviction appeal, the TCCA pointed to *Boykin* for its holding that the test for a legal plea was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Wells*, 2016 WL 656616, at *8. The TCCA also relied on state court cases involving the legality of guilty pleas. The guilty plea law in the state court cases

embodied the constitutional principles enunciated in *Boykin* and *Alford* and, indeed, the state court cited to those Supreme Court cases.

Similarly, in considering the claims now raised in the second amended petition, the TCCA applied the two-prong test in *Strickland*, with *Hill*'s modification to the prejudice prong, to evaluate whether counsel's alleged shortcomings amounted to ineffective assistance. Likewise, the TCCA cited to *Strickland*, *Hill*, and several state court cases, including *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975). The cited state court cases encapsulate the teachings of *Strickland* and *Hill*.

The TCCA applied the relevant legal rules to the Petitioner's nolo contender plea. *See Ahart v. Bradshaw*, 122 F. App'x 188, 195 (6th Cir. 2005) (finding that "*Alford* applies" when a defendant pleads guilty, but 'is unwilling or unable to admit his participation in the acts constituting the crime'"); *Franks v. Lindamood*, No. 1:06-0018, 2007 WL 3046357, at *12 (M.D. Tenn. Oct. 15, 2007), *aff'd*, 401 F. App'x 1 (6th Cir. 2010); *cf. Eggers v. Warden*, 826 F.3d 873, 876 (6th Cir. 2016) (finding that an *Alford* requirement does not apply when a petitioner protests his innocence at sentencing, rather than during the plea colloquy).

The TCCA also applied the pertinent Supreme Court precedents to Petitioner's claims of ineffective assistance. *See Cullen*, 563 U.S. at 189 (commenting, with respect to ineffective assistance claims, "[t]here is no dispute that the clearly established federal law here is *Strickland v. Washington*"); *Premo*, 562 U.S. at 129 (stating that a petitioner establishes prejudice where he demonstrates "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" (quoting *Hill*, 474 U.S. at 59)). Thus, the TCCA's decision is not contrary to clearly established federal law as determined by the United States Supreme Court.

The Court now considers whether the TCCA unreasonably applied the cited Supreme Court precedents to reach its decision on Petitioner's claims.

### b.    Analysis

In addressing Petitioner's assertion that counsel's failure to give him sufficient time to reflect on his guilty plea coerced him into entering the plea, the TCCA pointed to the post-conviction court's determination that Petitioner's testimony on this issue at the post-conviction hearing was not credible.  *Wells*, 2016 WL 656616, at *8.   The post-conviction court also had noted that it was unclear as to how granting additional time to consider the plea would have affected Petitioner's decision to plead guilty.  *Wells*, 2016 WL 656616, at *8.   The finding of a lack of clarity, apparently, was tied to Petitioner's testimony at the evidentiary hearing that he would have obtained a better lawyer who would have investigated the case more thoroughly, had he had more time to ruminate on the plea agreement.  *Id.*, 2016 WL 656616, at *4.

The TCCA likewise pointed to the post-conviction court's finding that the transcript of Petitioner's April 2, 2012 guilty plea hearing indicted that his plea was knowing and voluntary.[4] Observing that Petitioner's solemn declarations in open court concerning his plea erected "a formidable barrier" in any subsequent collateral proceedings because the declarations "carry a strong presumption of verity," the TCCA concluded that Petitioner had not shown that his plea

---

[4] The TCCA summarized Petitioner's responses during that colloquy, as follows:

> The petitioner testified that he signed his guilty plea form after it was read to him and that he understood the terms of the form. He stated that no one had forced or threatened him to plead guilty or made any promises to induce his guilty plea. He agreed that he was pleading guilty of his own free will. The petitioner stated that he had no complaints about the work of trial counsel. He agreed that he was satisfied with trial counsel's representation and that trial counsel satisfactorily investigated and prepared for the case.

*Wells*, 2016 WL 656616, at *1.

was unknowing and involuntary and found that he was entitled to no relief. *Id.*, 2016 WL 656616, at *8 (citations omitted).

Counsel testified at that same hearing, and he provided the circumstances underlying the plea offer and the reasons for what he viewed as a firm plea deadline. Counsel stated that Petitioner authorized him to make a counter offer of twenty-five years to the prosecution's offer of thirty years one week before the plea deadline. Counsel further stated that Petitioner learned on the Friday before the plea deadline that his offer to plead nolo contendere for a twenty-five year sentence had been accepted by the prosecution. Counsel explained that the prosecutor had set the plea deadline due to the difficulty of the case and to her concerns about subjecting the victim's family to protracted plea negotiations. *Id.*, 2016 WL 656616, at *5. Counsel surmised that, while it was possible that the prosecutor would have extended the deadline to allow additional time for Petitioner to contemplate the plea offer, he did not believe that she would have so done. *Id.*, 2016 WL 656616, at *5.

Counsel testified that he had advised his client that he had two options. *Id.*, 2016 WL 656616, at *8. Counsel told Petitioner that he could choose either to enter the plea to second-degree murder or to proceed to trial on the charge of first-degree murder, where he would face, upon conviction, a much greater sentence than the sentence he would confront upon his conviction for second-degree murder, as provided for by the plea agreement. *Id.*, 2016 WL 656616, at *8.

Petitioner testified, when asked what he would have done with more time, that he would have gotten a better lawyer to perform an investigation [Doc. 12-8, Post-Conviction Hr'g Tr. at 44].

Petitioner, however, did not connect any prospective attempt to get a better lawyer to counsel's failure to secure a plea-deadline extension. Nor did Petitioner demonstrate how

counsel's supposed error affected Petitioner's plea decision. True, Petitioner makes a bare allegation in his second amended § 2254 petition that he would not have pleaded nolo contendere and would have insisted on going to trial, had counsel obtained more time for him to consider his plea. However, Petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59. Petitioner's statement, as related in the TCCA's opinion, "that he wanted to enter a 'nolo contendere' plea that day, *Id.*, 2016 WL 656616, at *4, does not support that there is *a reasonable probability* that, but for counsel's purported misstep, he would not have pleaded guilty and would have insisted on standing trial.

The TCCA's implicit conclusion and the post-conviction court's explicit finding that Petitioner did not show prejudice from counsel's purported inadequacy [Doc. 12-8, Post-Conviction Hr'g Tr. at 80] were not unreasonable applications of the standards in *Strickland* and *Hill.*

Furthermore, "[w]hen a defendant brings a federal habeas petition challenging his plea, the state generally satisfies th[e] burden [of showing that a plea is voluntary and knowing] by producing a transcript of the plea proceeding. A state court finding that the plea was proper is accorded a presumption of correctness, unless the transcript of the plea proceeding is inadequate to demonstrate that the plea was voluntary, intelligent and knowing." *Stumpf v. Mitchell*, 367 F.3d 594, 600 (6th Cir. 2004), *judgment rev'd in part, vacated in part sub nom. Bradshaw v. Stumpf*, 545 U.S. 175 (2005) (citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993)). The plea hearing transcript Respondent submitted shows that Petitioner was advised of his rights, that he acknowledged that he understood those rights, and that he intentionally surrendered those rights [Doc. 12-2, Plea Hr'g Tr]. The transcript likewise reveals that, when questioned by the

trial court, Petitioner responded that that no one had forced or threatened him to plead nolo contendere, and he confirmed that he understood the consequences of his conviction and was satisfied with his attorney's investigation of the facts [*Id.*].

The Court thus concludes that Petitioner is not entitled to relief because the state court did not unreasonably apply well-established Supreme Court case law in rejecting Claim 1.a and the rejection did not result from an unreasonable determination of the facts.

### 3. Ineffective Assistance - Claim Two

In Claim 2.a, Petitioner maintains that counsel failed to interview the key witness, Jack Eugene Riffey, and, in Claim 2.d, that he failed to investigate and present exculpatory evidence of the distance between the muzzle of the weapon and the entry wound of the victim [Doc. 5 at 7].

### a. Failure to Interview Key Witness

The TCCA summarized trial counsels' testimony as pertinent to Claim 2.a, as follows:

> Both trial counsel and co-counsel testified that they made numerous efforts to contact Mr. Riffey and that Mr. Riffey was not responsive to any of these efforts. Co-counsel made phone calls that went unanswered, and Mr. Riffey refused to speak to an investigator who was dispatched to Mr. Riffey's home to speak with him.

*Wells*, 2016 WL 656616, at *9. The TCCA then agreed with the post-conviction court that Petitioner had not shown ineffective assistance of counsel. *Id.,* 2016 WL 656616, at *9.

Counsels' above testimony at the post-conviction hearing demonstrates that they and their investigator exhaustively attempted to contact Mr. Riffey, but that he rebuffed all their attempts to interview him. "The prosecution and the defense have an equal right to interview witnesses in a criminal proceeding," but a prosecution "witness who does not wish to speak to or be interviewed by the defense prior to trial may not be required to do so." *United States v.*

*Montana*, No. 84-3674, 1986 WL 17465 802 F.2d 460 (6th Cir. Aug. 15, 1986) (all citations omitted).  As the Sixth Circuit has recognized "[a] defendant is entitled to have access to any prospective witness although such right of access may not lead to an actual interview." *United States v. Scott*, 518 F.2d 261, 268 (6th Cir. 1975).

The only proof in the record is that the defense did all it could do secure an interview with this witness, and the fact that they were unsuccessful in this endeavor does not amount to a deficient performance.  *See Castillo v. Stephens*, 640 F. App'x 283, 290 (5th Cir. 2016), *cert. denied sub nom. Castillo v. Davis*, 137 S. Ct. 279, 196 L. Ed. 2d 58 (2016) (concluding that, where prosecution witnesses declined to speak with counsel, state court's finding of no deficient performance was not an unreasonable application of *Strickland*); *cf. United States v. Smith*, 107 F.3d 876 (8th Cir. 1997) (finding no ineffective assistance where counsel made no attempt to interview a witness whose attorney would have advised her to refuse the interview).  "[T]the duty to investigate and prepare a defense is not limitless" and "does not necessarily require . . . that counsel must pursue every path until it bears fruit or until all conceivable hope withers." *Hamilton v. Ayers*, 583 F.3d 1100, 1129 (9th Cir. 2009) (internal quotation marks omitted).

As the TCCA pointed out, the post-conviction court determined that Petitioner had not shown either a deficient performance or prejudice and that "the weight of the evidence is strongly against the finding of any error on the part of defense counsel."  *Id.*, 2016 WL 656616, at *7.  Given the defense's repeated efforts to contact and interview Mr. Riffey, the Court finds that habeas corpus relief is unwarranted because the TCCA did not apply *Strickland* unreasonably in rejecting Petitioner's claim.

**b.       Failure to Investigate Exculpatory Evidence**

Petitioner maintains that counsel did not investigate and present exculpatory evidence in the form of the distance between the muzzle of the weapon and the entry wound of the victim. Notably, Petitioner does not flesh out how this evidence would have exculpated him and how he sustained any prejudice from this alleged shortcoming on the part of counsel.

When Petitioner offered this claim in his post-conviction appeal, the TCCA state court iterated counsel's testimony that he had thoroughly reviewed discovery materials with Petitioner, including "the autopsy report, which indicated that the gun was six inches to two feet away from the victim when it was fired." *Wells*, 2016 WL 656616, at *4. Counsel also stated that he had possession of numerous photographs of the crime scene and that "[i]t was pretty conclusive" as to "how far away the gun was from the victim's face when it was fired." *Id.*, 2016 WL 656616, at *4.

Trial counsel stated additionally that the defense's retained firearms expert concluded "that the gun barrel was five inches away from the victim's face when it was fired." *Id.*, 2016 WL 656616, at *4. Counsel testified that, while he recalled Petitioner's telling the expert about the "hot load" bullets,[5] the expert's report did not mention the "hot load" bullets. *Id.*, 2016 WL 656616, at *4. Counsel indicated that the firearms expert told him that, although it was possible that a weapon, like the murder weapon, could have accidentally discharged had Petitioner been attempting "to de-cock the weapon by pulling back on the trigger and then pulling back the hammer," he (the expert) could not state that this was the manner of discharge in Petitioner's case. *Id.*, 2016 WL 656616, at *6.

---

[5] Petitioner explained, in his testimony at the post-conviction hearing, that "hot load" bullets contain extra gunpowder "to make them fire hotter and faster." *Id.*, 2016 WL 656616, at *2.

Counsel's testimony shows that he obtained evidence regarding the distance between the weapon and the victim's face. The firearms expert stated that he could not say that the weapon accidentally discharged. Petitioner has not shown that a further investigation would have disclosed evidence to support an "accidental discharge" theory. Under these circumstances, the Court finds that the TCCA did not apply *Strickland* unreasonably in concluding that Petitioner "has not met his burden of showing that trial counsel was ineffective." *Id.*, 2016 WL 656616, at *9.

## C.     Procedurally Defaulted Claim

Petitioner maintains that trial counsel gave him ineffective assistance in four additional instances. Counsel failed to follow the firearms expert's recommendations (Claim 2.b) [Doc. 6 at 7]. Counsel also failed to interview the victim's younger son, D.C. (Claim 2.c) [*Id.*]. Counsel further failed to investigate whether the homemade ammunition in the murder weapon was such a mixture that it would alter ballistics testing (Claim 2.e) [*Id.* at 17]. Counsel likewise failed to develop psychological evidence suggested by Dr. Diane McCoy, who stated that she needed to look at the crime scene, but that she never went to the scene (Claim 2.f) [*Id.*].

Respondent correctly argues that Petitioner did not raise any of these four claims in his post-conviction proceedings. Respondent suggest that his failure to raise the claims amounts to a failure to exhaust his claims and constitutes a procedural default.

A state prisoner who petitions for habeas corpus relief must exhaust his available state court remedies by presenting his federal habeas claim first to the state courts for consideration. 28 U.S.C. § 2254(b)(1). A claim is exhausted fully if it has been pursued at each level of state court review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999). A prisoner who has failed to present a federal claim to all levels of the state

courts and who is barred by a state procedural rule from returning with his claim to those courts has committed a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

As Respondent correctly indicates, Petitioner's ineffective assistance claims were not raised on post-conviction appeal. Respondent thus argues that the claims have not been exhausted completely and are subject to a finding of procedural default.

Federal review of a procedurally defaulted claim is foreclosed, unless the habeas petitioner shows cause to excuse his failure and actual prejudice resulting from the alleged constitutional violation. *Id.* Absent cause and prejudice, a petitioner who shows that he is actually innocent can overcome the procedural hurdle as well. *Murray v. Carrier*, 477 U.S. 478, 488, 496 (1986).

As noted, Petitioner did not respond to Respondent's assertion of procedural default, and he, consequently, has not argued or shown that he presented these claims to the state courts before raising them in this federal habeas court. The Court has independently reviewed the state court record and does not find that Petitioner submitted these claims to the TCCA in his post-conviction appeal [Doc. 12-9, Petr.'s Post-Conviction Br.]. Petitioner has offered nothing to show cause and prejudice, and federal review of these remaining four claims of ineffective assistance are barred from federal habeas review.

## IV.    CONCLUSION

For the above reasons, this state prisoner's second amended petition for a writ of habeas corpus [Doc. 6] will be **DENIED** and this case will be **DISMISSED**.

## V.    CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA). A petitioner may appeal a final order in a § 2254 case only if he is issued a COA, and a COA will be

issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). A petitioner whose claims have been denied on a procedural basis must demonstrate that reasonable jurists would debate the correctness of a court's procedural rulings. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). Where claims have been dismissed on their merits, a petitioner must show that reasonable jurists would find the assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484.

After having reviewed the claims and in view of the law upon which is based the dismissal on the merits of the adjudicated claims and the procedural basis upon which is based the dismissal of the other claims, reasonable jurors would neither debate the correctness of the Court's procedural rulings nor its assessment of the claims. *Id.* Because reasonable jurists could not disagree with the resolution of these claims and could not conclude that they "are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), the Court will **DENY** issuance of a COA. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

**AN APPROPRIATE ORDER WILL ENTER**.


*/s/*_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**